In the District Court of the United States
For the Northern District of Florida

Latavius Robinson,          )
As private attorney general.   )
     Plaintiff            )
                     )
     v.                 )     Case No. 4:25 cv 14 - RH/MJF
                     )
UNITED WHOLESALE MORTGAGE, LLC, )
John and Jane Doe's including all
similarly situated as predicate actors[1]
     Defendants.        )

<u>Original petition, complaint, and claim</u>
<u>under authority of 18 U.S.C. § 1964(a)&(c) – racketeering,</u>

<u>Statement of subject matter jurisdiction</u>

1. This court has jurisdiction over the subject matter of this complaint under authority of 28 U.S.C. § 1331, *federal question jurisdiction,* 18 U.S.C. § 1964(a)&(c), 18 U.S.C. §§ 513, 1341, 1961 & 1962, *civil racketeering,* and based on the testimony of competent fact witnesses demonstrating the factual sufficiency of the complaint, and the nexus of all respondent actors to federal statutes articulating civil and criminal wrongs, and Latavius Robinson's reliance common law authorities including doctrines of the United States Supreme

---

[1] An abbreviated list is available, but all predicate actors known at this time are not named due to members of this syndicate's propensity to resort to any means including death threats to preserve their extortion racket.


FILED USDC FLND TL
JAN 10 '25 PM 2:50
*Bf*

Court.    This action is timely as the fraud perpetrated by UNITED WHOLESALE MORTGAGE, LLC, was discovered well within the presumptive statute of limitations on or about, April 2024.

## Statement of *in personam jurisdiction*

2. This court has jurisdiction, subject to compliant service, over all respondents as all respondents are known to have committed criminal acts or aided and abetted criminal acts within the geographic boundaries of the Northern District of Florida.

## Statement of venue

3. Venue is appropriate in the Northern District of Florida, as the wrongs complained of began, were continued, and were either concluded in the Northern District of Florida, or the terminus of the fraud have not been reached at the pattern of fraud continues.

## Notice to the court

4. Congress, in enacting civil racketeering laws, intended that persons such as Latavius Robinson are *private attorney generals.*  See Agency Holding Corp. v. Malley-Duff & Associates, 107 **SUPREME COURT** 2759, 483 U.S. 143, 151 (1987) and Rotella v. Wood *et al.*, 528 U.S. 549 (2000).

## Theory of the Case

UNITED WHOLESALE MORTGAGE, LLC, an association in fact affecting interstate commerce, manufactured evidence of indebtedness, and used the false evidence of indebtedness to extort property from Latavius Robinson. Agents whose acts clearly identify them as *predicate actors,* acting for, and in concert with UNITED WHOLESALE MORTGAGE, LLC, knew, and understood that the alleged claims against Latavius Robinson which deprived Latavius Robinson of property worth in excess of $300,000.00, were based on manufactured evidence of indebtedness.  The taking of Latavius Robinson's property based on false evidence of indebtedness was accomplished by two or more of the predicate actors working for, or in concert with UNITED WHOLESALE MORTGAGE, LLC. The pattern of UNITED WHOLESALE MORTGAGE, LLC, manufacturing evidence of indebtedness to take property away from persons who have no lawfully enforceable obligation to UNITED WHOLESALE MORTGAGE, LLC, will likely continue unless abated.

## Plaintiffs' Preliminary RICO Case Statement

Latavius Robinson, in this complaint, has **testified** to injury to property and business by reason of acts which violate section 4 of the Clayton Act. See *Attick v. Valeria Associates, L.P.,* S.D. N.Y. 1992, 835 F. Supp. 103. Latavius

Robinson has articulated violation of racketeering laws, testified that the violation injured both business and property, warranting treble damages. See *Avirgan v. Hull,* C.A. 11 (Fla.) 1991, 932 F.2d 1572. In naming UNITED WHOLESALE MORTGAGE, LLC, Latavius Robinson has established that an enterprise exists which undeniably affects interstate commerce. See *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,* C.A.D.C. 1990, 913 F.2d 948, 286 U.S. App. D.C. 182, certiorari denied 111 S.Ct. 2839, 501 U.S. 1222, 115 L.Ed. 2d 1007. Latavius Robinson has standing to sue under RICO, as Latavius Robinson has shown violations of RICO, injury to property, and causation of the injury by the violations. See *Hecht v. Commerce Clearing House, Inc.* C.A. 2 (N.Y.) 1990, 897 F.2d 21, 100 A.L.R. Fed. 655. Latavius Robinson has perfected a RICO claim by showing the existence of a RICO enterprise, showing a pattern of racketeering activity: fraud, shown nexus between the defendants and the pattern of frauds, and shown resulting injury to property. See *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* D.Del. 1992, 821 F. Supp. 232. Latavius Robinson has demonstrated that Latavius Robinson has sustained injuries as proximate result of the pattern of frauds by the defendants. See *Jordan v. Herman,* F.D. Pa. 1992, 792 F. Supp. 380. UNITED WHOLESALE MORTGAGE, LLC does illicit business benefiting the syndicate to which UNITED WHOLESALE MORTGAGE, LLC, et al.

belong, directly and indirectly. The syndicate is able to recoup and profit by UNITED WHOLESALE MORTGAGE, LLC's investment affecting interstate commerce. See *Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.* S.D.N.Y. 1987, 114 F.R.D. 684. Latavius Robinson clearly articulated being UNITED WHOLESALE MORTGAGE, LLC target of fraud and resulting *de jure* property losses. See *Polletier v. Zweifel,* C.A. 11 (Ga.) 1991, 921 F.2d 1465, rehearing denied 931 F.2d 901, certiorari denied 112 S.Ct. 167, 502 U.S. 855, 116 L.Ed. 131. The cause-in-fact that but-for the chicanery of the enterprise members including UNITED WHOLESALE MORTGAGE, LLC, et al., Latavius Robinson would have not been deprived of business interests, business opportunities, and property interests and would not have incurred tangible losses is sufficient to state factual causation for provision of RICO act providing for treble damages. See *Khurana v. Innovative Heath Care Systems, Inc.,* C.A. 5 (La.) 1997, 130 F.3d 143, vacated 119 S.Ct. 442, 525 U.S. 979, 142 L.Ed. 2d 397, on remand 164 F.3d 900. Latavius Robinson's reliance on traditional principles of proximate causation applying to RICO cases is illustrated in the well pleaded testimony that Latavius Robinson was the target of extortion, and his property interests damaged the predicate acts of the defendants. See *In re American Honda Motor Co., Inc. Dealership Relations Litigation,* D. Md. 1996, 941 F.Supp. 528. There exists

an undeniable relationship between the acts of the defendants and the damage to property and business interests, and Latavius Robinson. See *Red Ball Interior Demolition Corp. v. Palmadessa,* S.D.N.Y. 1995, 908 F.Supp. 1226. The damage caused by the defendants was the natural and reasonably foreseeable consequence of the frauds perpetrated by the defendants. See *Protter v. Nathan's Famous Systems, Inc.* E.D. N.Y. 1995, 904 F.Supp. 101. The frauds perpetrated by the defendants was the legal cause of Latavius Robinson being the target of fraud, being defrauded of property interests, and related damages. See *Prudential Ins. Co. of America v. U.S. Gypsum Co.* D.N.J. 1993, 828 F.Supp. 287.  The enterprise to which all the defendants belong is evident to a high degree and it is also evident to a high degree that associates such as John Does and Jane Does 1-10[2], act as a continuing unit. See *Compagnie de Reassuarance D'lle de France v. New England Reinsurance Corp.* D. Mass. 1993, 825 F.Supp. 370. It is undeniable that UNITED WHOLESALE MORTGAGE, LLC, receives money for defrauding parties such as Latavius Robinson, and UNITED WHOLESALE MORTGAGE, LLC, receipts and compensation to collateral enterprises represents the necessary investment in the class of business to which all the defendants belong for the continuing privilege of defrauding people of their legitimate property

---

[2] Naming the actual predicate actors at this time will likely result in retaliation including retaliation against persons with the will and resolve to stand up to racketeering.

interests. See *Grand Cent. Sanitation, Inc. v. First Nat. Bank of Palmerton*, M.D.Pa. 1992, 816 F.Supp. 299. Undeniably, the defendants have used the United States Mail Service for purposes of fraud and extortion. UNITED WHOLESALE MORTGAGE, LLC's actions constitute a violation of § 3-305 of the Uniform Commercial Code, as they have attempted to enforce an obligation against Latavius Robinson based on manufacturing evidence of indebtedness. Pursuant to § 3-306 of the Uniform Commercial Code, Latavius Robinson asserts a claim of a property interest in the security instrument and its proceeds, including a claim to rescind a negotiation and to recover the security instrument or its proceeds.

(this space intentionally left blank)

<u>Affidavit of Latavius Robinson</u>

I, Latavius Robinson of age and competent to testify, state as follows based on my own personal knowledge:

(1) About April 11, 2024, I received a demand for my money or my property through the United States mail service. The party who sent the demand to me claimed that my property and business interests were a registered security, and that the party with the alleged claim against my property and business interests was the lawful owner of the security.

(2) About May 14, 2024, I received a demand for my money or my property through the United States mail service. The party who sent the demand to me claimed that my property and business interests were a registered security, and that the party with the alleged claim against my property and business interests was the lawful owner of the security.

(3) About June 7, 2024, I received a demand for my money or my property through the United States mail service. The party who sent the demand to me claimed that my property and business interests were a registered security, and that the party with the alleged claim against my property and business interests was the lawful owner of the security.

(4) About June 9, 2024, I received a demand for my money or my property through the United States mail service. The party who sent the demand to me

claimed that my property and business interests were a registered security, and that the party with the alleged claim against my property and business interests was the lawful owner of the security.

(5) About June 11, 2024, I received a demand for my money or my property through the United States mail service. The party who sent the demand to me claimed that my property and business interests were a registered security, and that the party with the alleged claim against my property and business interests was the lawful owner of the security.

(6) Using the demands which were forced on me through the United States Mail Service on April 11th, May 14th, June 7th, 9th, and 11th, of 2024, I have suffered tangible losses to my business and property interests. As I have an immediate apprehension of being perpetually victimized by the same predicate actors, my damages will be ongoing and continuous unless abated.

By: _Latavius Robinson_____

Latavius Robinson

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_____

COUNTY OF _Leon_____

      Before me, the undersigned, a Notary Public in and for said County and State on this _10th_ day of _January_, 2025, personally appeared _Latavius Robinson_____ to me known to be the identical person who executed the within and foregoing instrument, <u>Affidavit of Latavius Robinson</u>, and acknowledged to me that he executed the same as his free and voluntary act.

      Given under my hand and seal the day and year last above written.

My commission expires _April 3, 2028_____

_____ Notary Public

JACKSON D. QUARTERMAN
MY COMMISSION # HH 512046
EXPIRES: April 3, 2028

<u>Memorandum of law verifying that the United States Attorney for the
Northern District of Florida has a **DUTY** to enter an appearance and assist in
the prosecution of this case</u>

The Supreme Court has repeatedly held that the **United States** is not
bound by a statute of limitations or subject to the defense of laches when it
brings a lawsuit in its sovereign capacity to enforce a public right or to protect
the public's interest. See, e.g., *Utah Power & Light Co. v. United States*, 243
U.S. 389, 409 (1917) ("As a general rule, *laches* or neglect of duty on the part
of officers of the government is no defense to a suit by it to enforce a public
right or protect a public interest."). Accord *Nevada v. United States*, 463 U.S.
110, 141 (1983); *United States v. California*, 332 U.S. 19, 40 (1947); *United
States v. Summerlin*, 310 U.S. 414, 416 (1940); *Bd. of County Comm'rs v.
United States*, 308 U.S. 343, 351 (1939); *Guaranty Trust Co. of New York v.
United States*, 304 U.S. 126, 132 (1938); D*avis v. Corona Coal Co.*, 265 U.S.
219, 222 (1924); C*hesapeake & Delaware Canal Co. v. United States,* 250 U.S.
123, 125 (1919); *United States v. Insley*, 130 U.S. 263, 266 (1889); *United
States v. Thompson*, 98 U.S. 486, 489 (1878); *United States v. Kirkpatrick*, 22
U.S. 720, 735-37 (1824). Accord *United States v. Angell*, 292 F.3d 333, 338 (2d
Cir. 2002); *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1427 (11th

Cir. 1998); *United States v. Arrow Transp. Co.*, 658 F.2d 392, 394 (5th Cir., Unit B, Oct. 1981); *United States v. Weintraub*, 613 F.2d 612, 618-19 (6th Cir. 1979). "This principle protects public rights vested in the government for the benefit of all from 'the inadvertence of the agents upon which the government must necessarily rely.'" *Herman*, 140 F.3d at 1427 (quoting *United States v. Alvarado*, 5 F.3d 1425, 1427 (11th Cir. 1993)); accord *SEC v. Rind*, 991 F.2d 1486, 1491 (9th Cir. 1993). The RICO statute itself does not contain any time limitations upon the United States' ability to bring civil RICO suits for equitable relief. Indeed, Congress recognized in RICO's legislative history that "there is no general statute of limitations applicable to civil suits brought by the United States to enforce public policy, nor is the doctrine of *laches* applicable." S. REP. No. 91-617 at 160. Therefore, it is clear that, consistent with the general principles discussed above, Congress did not intend to, and affirmatively decided not to, apply a statute of limitations or the doctrine of *laches* to civil RICO suits for equitable relief brought by the **United States**. See, e.g., SEC v. Rind, 991 F.2d 1486, 1491 (9th Cir. 55 1993); *SEC v. McCaskey*, 56 F. Supp. 2d 323, 327 (S.D.N.Y. 1999); *SEC v. Willis*, 777 F. Supp. 1165, 1174 (S.D.N.Y. 1991); S*EC v. Gulf & Western Indus., Inc.*, 502 F. Supp. 343, 348-49 (D.D.C. 1980); *SEC v. Penn Central Co.*, 425 F. Supp. 593, 599 (E. D. Pa. 1976). See, e.g., *United States v. Firestone Tire & Rubber Co.*, 374 F. Supp.

431, 433 (N.D. Ohio 1974). 57 See, e.g., *FTC v. Verity Int'l, Ltd.*, 194 F. Supp. 2d 270, 286 (S.D.N.Y. 2002); *FTC v. Crescent Pub. Group, Inc.*, 129 F. Supp. 2d 311, 324 (S.D.N.Y. 2001); *United States v. Reader's Digest Ass'n, Inc.*, 464 F. Supp. 1037, 1043 (D. Del. 1978).

In accordance with the foregoing authority, every court that has considered the issue has held that a statute of limitations and the doctrine of laches do not apply against claims of the United States to obtain injunctive and other equitable relief under RICO. See *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 72-74 (D.D.C. 2004); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1152 (E.D.N.Y. 1992); *United States v. Int'l Bhd. of Teamsters*, 708 F. Supp. 1388, 1402 (S.D.N.Y. 1989); *United States v. Bonanno* Organized Crime Family, 695 F. Supp. 1426, 1430-31 (E.D.N.Y. 1988). Moreover, courts in other analogous enforcement contexts similarly have held that the doctrine of *laches* does not apply against actions of the United States to enforce the securities laws, antitrust laws, or fair-trade laws. Likewise, in various other civil enforcement actions, courts have concluded that limitations periods will not be imposed on suits brought by the United States. See *Dole v. Local 427, Int'l Union of Elec. Radio & Mach. Workers*, 894 F.2d 607, 610-16 (3d Cir. 1990) (no statute of limitations applies when Secretary of Labor sues under Labor-Management Reporting and

Disclosure Act ("LMRDA") to enjoin local union from refusing to allow one of its members to review collective bargaining agreements); *Donovan v. West Coast Detective Agency, Inc.,* 748 F.2d 1341, 1343 (9th Cir.1984) (Secretary of Labor suit to compel filing of requisite reports under LMRDA); Donovan v. Square D Co., 709 F.2d 335, 341 (5th Cir. 1983) (Secretary of Labor's anti-retaliation suit under Occupational Safety and Health Act); *Marshall v. Intermountain Elec. Co.,* 614 F.2d 260, 263 (10th Cir. 1980) (same); *Nabors v. NLRB,* 323 F.2d, 686, 688-89 (5th Cir. 1963) (National Labor Relations Board enforcement of National Labor, Relations Act); see also *United States v. Ali,* 7 F.2d 728 (E.D. Mich. 1925) (*laches* inapplicable to denaturalization proceeding brought by the government); *United States v. Brass,* 37 F. Supp. 698 (E.D.N.Y. 1941) (same).

As a matter of law, the United States cannot be found to have implicitly waived its sovereign capacity to protect public interests through civil RICO suits for equitable relief. In *United States v. California,* 332 U.S. 19 (1947), the Supreme Court considered a dispute between a state and the federal government over ownership and control of submerged coastal land. The state argued, *inter alia,* that the federal government's policies, decisions and actions, as well as the "conduct of its agents" served to waive the United States' claim to the lands. See id. at 39. The Supreme Court squarely rejected this analysis: even

assuming that Government agencies have been negligent in failing to recognize or assert the claims of the Government at an earlier date, the great interests of the Government in this ocean area are not to be forfeited as a result. **The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes . . ..** Id. at 39-40 (emphasis added); see also cases in Section III (C)(3) below (demonstrating that *equitable estoppel* does not lie against the United States acting as sovereign to protect the public

Similarly, the Supreme Court has explained, in the context of a **private** right granted by federal statute, <u>**"Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate**</u>." *Brooklyn Savs. Bank v. O'Neil,* 324 U.S. 697, 704 (1945). See also *Tompkins v. United Healthcare of New England, Inc.,* 203 F.3d 90, 97 (1st Cir. 2000) ("[a] statutory right may not be disclaimed if the waiver could 'do violence to the public policy underlying the legislative enactment.'") (internal quotations and citation omitted). RICO vests the Attorney General with the exclusive authority to bring civil RICO suits for injunctive and equitable remedies to vindicate the public's paramount interests in eliminating corruption from the channels of commerce. See Section II (D)

above; *United States v. Int'l Bhd. of Teamsters*, 3 F.3d 634, 638 (2d Cir. 1993) (when it proceeds under § 1964, "the government sues in its sovereign capacity pursuant to a 'compelling governmental interest' and 'strong congressional policy'") (citations omitted). The public interest vindicated by RICO enforcement actions cannot be understated. The Congressional Statement of Findings and Purpose underlying RICO explains that, among other things, RICO was designed to combat activities that weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens . . . . Pub. L. No. 91-452, 84 Stat., at 922, 923. Indeed, Congress created RICO to provide new and expanded criminal and civil remedies to vindicate the public's interest in combating racketeering activity and "to free the channels of commerce" from such unlawful conduct. See Sections II (B) and (C) above. Consequently, the United States' right to maintain a civil RICO action, so clearly "charged or colored with public interest," *Brooklyn Savs. Bank*, 324 U.S. at 704, cannot be. Even assuming arguendo that the right of the United States to bring a civil RICO claim could be waived, a defendant would have an exacting burden to establish a waiver. "A waiver 'is ordinarily an intentional relinquishment or abandonment of a known

right or privilege.'" *United States v. Robinson*, 459 F.2d 1164, 1168 (D.C. Cir. 1972) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); see also *United States v. Olano*, 507 U.S. 725, 733 (1993); *Britamco Underwriters, Inc. v. Nishi, Papagjika & Assocs., Inc.*, 20 F. Supp. 2d 73, 77 n.2 (D.D.C. 1998). In the context of a right expressly reserved to the United States as sovereign, the waiver must be "unmistakable." See *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982) ("Without regard to its source, sovereign power, even when unexercised, is an enduring presence that governs all contracts subject to the sovereign's jurisdiction and will remain intact **unless surrendered in unmistakable terms.**") (emphasis added); *United States v. Cherokee Nation of Okla.*, 480 U.S. 700, 707 (1987) ("waiver of sovereign authority [to ensure that navigable waters remain free to interstate and foreign commerce] will not be implied, but instead must be surrendered in unmistakable terms") (internal quotation and citation omitted); *Bowen v. Public Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41, 52 (1986) ("we have declined in the context of commercial contracts to find that a sovereign forever waives the right to exercise one of its sovereign powers unless it expressly reserves the right to exercise that power in the contract." (internal quotation and citation to *Merrion* omitted)); *United States v. Philip Morris Inc.*, 300 F. Supp. 2d at 69 ("any waiver [of the Government's right to bring a civil RICO lawsuit] must be made in

unmistakable terms"); cf. also *United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("A waiver of sovereign immunity cannot be implied but must be unequivocally expressed.") (internal quotation and citation omitted).

It is well settled that "*equitable estoppel* will not lie against the Government as it lies against private litigants." *OPM v. Richmond*, 496 U.S. 414, 419 (1990). The Supreme Court has succinctly stated the rationale for this rule: "When the Government is unable to enforce the law because the conduct of its agents has given rise to an *estoppel,* the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler v. Community Health Servs. Of Crawford County, Inc.*, 467 U.S. 51, 60 (1984). See also *FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994) (Where *estoppel* against the United States would "frustrate the purpose of the statutes expressing the will of Congress or unduly undermine the enforcement of the public laws," it should not be invoked); *Alacare Home Health Servs. Inc. v. Sullivan*, 891 F.2d 850, 855 (11th Cir. 1990) (*equitable estoppel* should not apply when Government acting in its sovereign, rather than proprietary, function); *Chapman v. Santa Fe Pac. R. Co.*, 198 F.2d 498, 519 (D.C. Cir. 1952) ("It is settled law that no *estoppel* can arise against the Government in the exercise of a public or governmental function as distinguished from a proprietary one.") (citations omitted). While the Supreme Court has not absolutely foreclosed the

possibility that *estoppel* could lie against the United States in "extreme circumstances," it has never applied the doctrine of equitable estoppel against the United States. See *OPM v. Richmond*, 496 U.S. at 434; see also id. at 422 ("Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply *estoppel* against the Government, **yet we have reversed every finding of estoppel that we have reviewed.**") (emphasis added). *Accord ATC Petroleum, Inc. v. Sanders*, 860 F.2d at 1104, 1111 (D.C. Cir. 1988). For example, in *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917), the Supreme Court stated: As presenting another ground of *estoppel* it is said that the agents in the forestry service and other officers and employees of the government, with knowledge of what the defendants were doing, not only did not object thereto, but impliedly acquiesced therein until after the works were completed and put in operation. This ground also must fail. As a general rule, *laches* or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest.

Before *equitable estoppel* could ever lie against the United States, a Defendant would have to present evidence of significant "affirmative misconduct" on the part of the Government. See, e.g., *INS v. Hibi*, 414 U.S. 5, 8 (1973); *Montana v. Kennedy*, 366 U.S. 308, 314-15 (1961); *Long v. Area*

*Manager, Bureau of Reclamation*, 236 F.3d 910, 916 (8th Cir. 2001); *Drozd v. INS,* 155 F.3d 81, 90 (2d Cir. 1998); *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir. 1994). Such "affirmative misconduct" must consist, at minimum, of active misrepresentation or concealment; negligent, indifferent, or passive conduct by the Government will not suffice. See, e.g., *United States v. Marine Shale Processors*, 81 F.3d 1329, 1348-51 (5th Cir. 1996); *United States v. Harvey*, 661 F.2d 767, 775 (9th Cir. 1981); *United States v. City of Toledo*, 67 F. Supp. 603, 607 (N.D. Ohio 1994); *United States v. City of Menominee*, 727 F. Supp. 1110, 1121 (W.D. Mich. 1989). For example, in *Alaska Limestone Corp. v. Hodel*, 614 F. Supp. 642, 647 (D. Alaska 1985), the court rejected an *estoppel* claim even though Government officials had failed to comply with certain congressionally mandated deadlines. In so doing, the Alaska Limestone court concluded that the party claiming *estoppel* had offered nothing to show that the Government had "intentionally ignored" its responsibilities or "affirmatively sought to deceive or mislead" others. 614 F. Supp. at 648. Moreover, "[t]he case for *estoppel* against the government must be compelling," and, at a minimum, requires proof of (1) a false representation of fact; (2) a purpose to invite action by the party to whom the representation was made; (3) ignorance of the true facts by that party; (4) reasonable reliance; (5) a showing of injustice; and (6) lack of undue damage to the public interest. *ATC*

*Petroleum,* 860 F.2d at 1111; *Graham,* 222 F.3d at 1007; *United States v. Philip Morris Inc.,* 300 F. Supp. 2d at 71-72; *Moore v. Blue Cross & Blue Shield of the Nat'l Cap. Area,* 70 F. Supp. 2d 9, 31 (D.D.C. 1999). Defendants must demonstrate that all these elements are satisfied in order for equitable *estoppel* to apply. See, e.g., *Heckler,* 467 U.S. at 61. ("[H]owever heavy the burden might be when an *estoppel* is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an *estoppel* are present."); *ATC Petroleum,* 860 F.2d at 1111; *Trustees of Michigan Laborers' Accord Kelley v. Thomas Solvent Co.,* 714 F. Supp. 1439, 1451 (W.D. Mich. 1989);

*United States v. Vineland Chem. Co.,* 692 F. Supp. 415, 423-24 (D.N.J. 1988). *Health Care Fund v. Gibbons,* 209 F.3d 587, 591 (6th Cir. 2000); *Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir. 1992).

<u>Conclusion and remedy sought</u>

A jury's determination that two or more of the defendants are members of an association in fact which affects interstate commerce, that one or more members of the association in fact committed two or more acts of fraud, mail fraud, or extortion, that as a result of fraud, mail fraud, or extortion, Latavius Robinson was defrauded of property and business interests, and that the pattern of fraud, mail fraud, and extortion is likely to continue unless abated, requires

dissolution of UNITED WHOLESALE MORTGAGE, LLC as well as the syndicate to which all of the individual defendant's belong, ascertaining the identities of all the known victims of the scam articulated as committed at the hand of UNITED WHOLESALE MORTGAGE, LLC, et al., and payment by all of the defendants established to have played a role in the scam to Latavius Robinson and all who are similarly situated treble damages which in the case of Latavius Robinson would likely exceed one and a half million dollars.

**Jury Trial Demanded**

By: _____, Private Attorney General

Latavius Robinson
3009 Giles Place
Tallahassee, Florida 32309
rlatavius@yahoo.com
(850) 322-7940

(this space intentionally left blank)

Copies to:

Merrick Garland, Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

Pam Bondi
Potential Successor to Attorney General
610 South Blvd., Ste 102
Tampa, FL 33606

    -and-

CC:
Ashley Moody
Attorney General of Florida
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050